UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TEL JAMES BOAM,<br><br>Defendant. | Case No. 4:20-CR-00188-BLW-1<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

On December 14, 2021 the Court denied Defendant Tel James Boam's Motion for New Trial on the record. Dkt. 133. The Court now issues this supplemental memorandum to explain its reasoning in more detail.

## BACKGROUND

In fall of 2019, Melinda Boam, who was Defendant's wife at the time, reported to the Jefferson County Sheriff's Office that she was searching Defendant's phone and found a video of T.A., Melinda's daughter and Defendant's

**MEMORANDUM DECISION AND ORDER - 1**

stepdaughter, completely nude in the shower.

During analysis of the online backup for Defendant's phone, Homeland Security Investigations located 37 videos, all of which show T.A. in various stages of undress, including fully nude with her genitals exposed to the camera. The videos were recorded in a bathroom of Defendant and Melinda's home. The videos show T.A. both in and out of the shower, and the shower curtain in the videos is transparent. Forensic analysis of the online backup data revealed that Defendant's iPhone was associated with the backup files. Further forensic examination of the backup data revealed that the camera used to produce the videos looked like a charger that Melinda has previously found in the bathroom.

As part of the investigation, the victim participated in three forensic interviews. In the first interview, T.A. stated that she was unaware of why she was there. She did not disclose any further information regarding inappropriate conduct by Defendant during that interview. She was unaware that she had been recorded while showering.

In the second forensic interview, T.A. reported that on one occasion at a hotel in Idaho Falls, Idaho, Defendant gave T.A. the prescription medication Ambien, exposed himself to her in a hotel room, and attempted to penetrate T.A.'s vagina with his penis.

In the third and final forensic interview, T.A. disclosed that on one other occasion at the family's home in Jefferson County, Idaho, Defendant gave T.A. Ambien and engaged in genital-to-genital intercourse with T.A. in Defendant and Melinda's bed.

In August 2020, Defendant was charged in a 17-count indictment with 16 counts of attempted sexual exploitation of a minor child, and 1 count of possession of child pornography. Dkt. 1. On September 20, 2021, following a jury trial, the jury returned a guilty verdict for all 17 counts. The Defendant timely filed a motion for a new trial under Federal Rule of Criminal Procedure Rule 33.  other reasons.

## LEGAL STANDARD

A district court may grant a new trial when the "interest of justice so requires." Fed. R. Crim. P. 33(a). The power to grant a motion for a new trial "is much broader than its power to grant a motion for judgment of acquittal." *U.S. v. Alston*, 974 F.2d 1206, 1211 (9th Cir. 1992). The court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence for itself, and in so doing may independently assess the credibility of witnesses. *Id*.  "If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant

a new trial, and submit the issues for determination by another jury." *Id*. at 1211–12.

## ANALYSIS

Mr. Boam filed a motion for a new trial pursuant to Rule 33. Within his motion, Mr. Boam sets forth eight reasons he should be granted a new trial. The Government responded to each of these reasons and maintains that the Court's prior rulings were proper, and that Mr. Boam did not provide a sufficient basis for granting a new trial. Each of Mr. Boam's reasons for new trial are discussed below.

### A.    Allowing the Government's Rule 404(b), "other act", evidence.

Mr. Boam argues that the Court improperly admitted the Government's "other act" evidence pursuant to Federal Rule of Evidence 404(b). Before trial the Government filed a notice that it intended to introduce "other act" evidence for the purposes of proving the Defendant's motive, opportunity, intent, or absence of mistake or accident. Dkt. 51. Mr. Boam objected to the "other act" evidence, asserting, among other things, that the evidence was more prejudicial than probative. [1]  Dkt. 52. In his motion for a new trial, Mr. Boam argues allowing this

---

[1] To offset the alleged prejudicial effect of the Government's 404(b) evidence, he sought to admit polygraph evidence. The Court overruled the Defendant's objection and denied his motion for admission of polygraph evidence. Dkt. 89.

evidence prevented him from having a fair trial because he was not charged with these alleged prior bad acts, and this evidence put him in the position of having to prove his innocence on unproven prior bad acts.

Federal Rule of Evidence 404(b) states: "evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* at (b)(2). The Ninth Circuit applies the following four-part test to determine whether evidence is admissible under Rule 404(b):

> "(1) there must be a sufficient degree of evidence for the jury to find that the other acts were in fact committed; (2) the other acts evidence may only be introduced to prove a material issue in the case; (3) the other acts must not be too remote in time to the conduct charged; and (4) the other acts must be sufficiently similar to the charged conduct when they are being introduced to show intent.

*United States v. DeSalvo*, 41 F.3d 505, 509 (9th Cir. 1994).

Even if the evidence is admissible under Rule 404(b), the Court may still exclude the evidence under Federal Rule of Evidence 403 if its "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

MEMORANDUM DECISION AND ORDER - 5

When determining whether evidence is admissible under Rule 404(b), the court is not to weigh credibility. *Huddleston v. United States*, 485 U.S. 681, 690 (1988). Instead, the court must merely determine whether the jury could reasonably find th[ose] facts … by a preponderance of the evidence.[2] *Id*. However, under Federal Rules of Criminal Procedure Rule 33, Motion for New Trial, the Court may independently assess the credibility of witnesses. *Alston*, 974 F.2d at 1211.

Here, the Government presented testimony from T.A. and her mother, Melinda, about two incidents described by T.A. in her second and third forensic interviews.[3] Prior to trial, the Court reviewed the three forensic interviews of T.A. and the briefing submitted by the parties and found that a jury could reasonably find, by a preponderance of the evidence, that the requirements of Rule 404(b) were met. Specifically, that there was sufficient evidence for a jury to find the two incidents occurred, and that Mr. Boam was the actor. Dkt. 89. After conducting a Rule 403 balancing test, the Court determined that the highly probative value of the evidence was not substantially outweighed by a danger of unfair prejudice. *Id*.

---

[2] This Court found that a jury could have reasonably found, by a preponderance of the evidence, that the two incidents occurred and that Defendant was the actor. The Court also found that the other requirements of Rule 404(b) were met. The Government sought to introduce the evidence to prove a material issue in the case, and that the Defendant committed the charged acts with the requisite intent. Further, the acts were not too remote in time. Dkt. 89.

[3] The forensic interviews were not admitted into evidence during trial. T.A. and her mother testified as to their recollection of the events described in the interviews.

Accordingly, a preliminary determination of admissibility was made, and the evidence was ultimately admitted at trial. *Id.*

Having reviewed the briefing on the motion for a new trial and having heard the testimony from T.A. and her mother at trial, the Court affirms its prior decision to allow the Government to present the "other act" evidence. The jury and the Court had the opportunity to observe both witnesses at trial and evaluate their credibility. Additionally, both witnesses were subject to cross-examination, and Mr. Boam also called T.A. as a witness during his case-in-chief. Mr. Boam has not presented any further evidence or authority to persuade the Court that the admission of 404(b) evidence was improper. Because the requirements of Rule 403 and Rule 404(b) were met, Mr. Boam is not entitled to a new trial based on the admission of the "other act" evidence.

### B.   Excluding Defendant's polygraph evidence.

#### 1.   *Exclusion of Polygraph evidence*

To rebut the Government's 404(b) evidence, Mr. Boam sought to admit testimony from an expert witness about results of polygraph examinations he underwent.

A district court has wide discretion in determining the admissibility of polygraph evidence. *United Staes v. Benavidez-Benavidez*, 217 F.3d 720, 725 (9th

Cir. 2000). Polygraph evidence has powerfully persuasive value and creates a significant risk of misleading the jury. *United States v. Marshall*, 526 F.2d 1349, 1360 (9th Cir. 1995); *United States v. Ramirez-Robles*, 386 F.3d 1234, 1246 (9th Cir. 2004); *see also United States v. Scheffer*, 523 U.S. 303, 313 (1998) ("By its very nature, polygraph evidence may diminish the jury's role in credibility determinations.").

After reviewing the briefing from both parties, the Court determined that the probative value of the polygraph evidence was substantially outweighed by the danger of unfairly prejudicing the jury and ruled the polygraph evidence was excluded under Rule 403. After Mr. Boam filed a motion for reconsideration, the Court reviewed the polygraph results submitted by Mr. Boam and issued a second memorandum decision reaching the same conclusion—the balancing test under Rule 403 weighed against admitting the evidence.

The Court is not persuaded that the exclusion of Mr. Boam's polygraph evidence is grounds for a new trial here. Mr. Boam has not provided any additional information or evidence to support his assertion that this evidence was improperly excluded. The Court has now reviewed the evidence and briefing on this issue for a third time and affirms its prior rulings. Thus, the interest of justice does not require a new trial based on the exclusion of the polygraph evidence.

MEMORANDUM DECISION AND ORDER - 8

2.     *Daubert* hearings on expert testimony

Mr. Boam also argues that the Court should have conducted a *Daubert* hearing before ruling on the admissibility of the polygraph expert's testimony. He asserts that failure to do so was a denial of due process.

"Although a court may conduct a Rule 702, 403 or 704(b) examination, it is not required to undertake each of those inquiries before denying admission of the evidence." *United States v. Benavidez-Benavidez*, 217 F.3d 720, 725 (9th Cir. 2000). A "district court's exclusion of [] polygraph evidence under [Rule] 403 is, standing alone, sufficient." *Id*.

> "Throughout [the analysis], a judge assessing a proffer of expert scientific testimony under Rule 702 should also be mindful of other applicable rules. . . . Finally, Rule 403 permits the exclusion of relevant evidence 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . . . 'Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses.'"

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

The Court's analysis and basis for excluding the polygraph expert's testimony under Rule 403 was sufficient. While the Court could have considered Rule 702 and the *Daubert* factors or Rule 704(b) to provide an alternative reason for excluding the polygraph evidence, it was not required, nor was it necessary in

this case. *See Benavidez-Benavidez*, 217 F.3d at 725 (A "district court's exclusion of [] polygraph evidence under [Rule] 403 is, standing alone, sufficient."); *see also Marshall*, 526 F.2d at 1360 ("[A] trial court will rarely abuse its discretion by refusing to admit [polygraph] evidence, even for a limited purpose and under limited conditions."). Thus, Mr. Boam is not entitled to a new trial because the Court did not conduct a *Daubert* hearing for the polygraph expert.

### C.    Prohibiting Ms. Wright's expert testimony.

Mr. Boam asserts that the Court incorrectly ruled that Carrie Wright's expert testimony was inadmissible.

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Pursuant to Rule 704, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone. Fed. R. Evid. 704.

Prior to trial, the Defendant filed an expert disclosure stating that "[Carrie Wright's] expert testimony is the interaction and continued counseling with the defendant over matters associated with the divorce from his spouse, Melinda (Boam) Scott and the credibility of his actions and therapy as it relates to the pleadings of specific intent and general knowledge of the defendant." Dkt. 64. The Government objected pursuant to Federal Rules of Evidence 702 and 704.

Mr. Boam's expert witness disclosure failed to provide the details that Mr. Boam intended to elicit from Ms. Wright; the facts and data she relied upon; the reliable principles and methods she used; and the application of such reliable principles and methods in this case. In a memorandum decision, the Court found that the disclosure was insufficient to meet the requirements of Rule 702 and ruled that Ms. Wright's testimony was inadmissible. Dkt. 96. Additionally, even if the disclosure had met Rule 702's requirements, Ms. Wright could not state an opinion regarding Defendant's particular mental state or condition regarding the alleged conduct at issue in the case, nor an opinion regarding Defendant's truthfulness

because those opinions or inferences would be inadmissible under Rule 704. *Id*.

During the trial, Mr. Boam filed two motions asking the Court to allow Ms. Wright to testify. In the first of these motions, Mr. Boam disclosed for the first time that Ms. Wright reviewed all three forensic interviews and would provide her opinions on the truthfulness and veracity of the victim and whether the forensic interviews followed proper protocol. Dkt. 112. The second motion parroted the first, adding that Ms. Wright has expertise in trauma counseling and that T.A. should be subject to an expert's opinion to show bias and truthfulness. Dkt. 119.

The Court found that Mr. Boam failed to timely disclose these opinions in violation of Federal Rule of Evidence 16 and the Court's Procedural Order. Additionally, the Court ruled that Mr. Boam's disclosure of Ms. Wright's opinions about the forensic interviews failed to provide the information required under Rule 702 and the Court's Procedural Order. Having reviewed the record and the briefing on the motion for a new trial, the Court affirms its earlier findings that Ms. Wright's testimony was inadmissible.

Mr. Boam also asserts that the Court needed to hold a *Daubert* hearing to determine the admissibility of Ms. Wright's testimony. However, the court is not required to conduct a Rule 702, 403 or 704(b) examination before denying admission of evidence. *United States v. Benavidez-Benavidez*, 217 F.3d 720, 725

(9th Cir. 2000). Here, a hearing was not necessary to aid the Court in evaluating the sufficiency and timeliness of the disclosures for Ms. Wright's testimony. The insufficiency was apparent on the face of the disclosures—there were no details of the expert opinions to be elicited, the facts and data relied upon, and the principles and methods used. Further, the late disclosure of Ms. Wright's opinions on the forensic interview was confirmed by review of the date stamps for the filings in the Court's docket. Thus, the Court properly exercised its discretion not to conduct *Daubert* hearing to evaluate the admissibility of Ms. Wright's testimony. Accordingly, Mr. Boam has not established that the interest of justice requires a new trial because Ms. Wright's testimony was excluded.

**D.    Denying the ability to present evidence on the ex-wife's motives or the prior divorce of the Defendant and Melinda.**

Defendant asserts that limiting the Defendant's defense regarding the "nasty and vindictive divorce" denied him the freedom to present his theories. Namely, that it limited explanation for the possibility of his ex-wife's motives to curtail his rights with his biological children and enable a better property and debt settlement because of the allegations that form the basis of this case.

During trial the Court ruled that details of the divorce proceedings between the Defendant and his ex-wife were not relevant. The divorce had occurred

months, if not years, after the videos in at issue were taken. Details of the divorce had virtually no probative value. Accordingly, it was determined that the probative value was substantially outweighed by a danger of confusing the issue, misleading the jury, and undue delay.

The motion for a new trial simply asserts that denying admission of this evidence denied him of his freedom to present his theories. The Defendant does not elaborate on how evidence regarding the divorce was impermissibly denied. Nor does Defendant detail how prohibiting this evidence resulted in a serious miscarriage of justice. Therefore, the Court will affirm it's previous ruling on this issue.

### E.      Covid restrictions preventing Defendant from observing the jury.

Defendant claims that due to COVID restrictions in the courtroom, he was prevented from observing the jury which restricted the ability to formulate questions based upon the jury's mannerisms. In response, the Government states that they did not have any trouble viewing the jury.

To be sure, the ability to observe the jury and respond to their reactions is important to counsel's ability to present their case. In this case, Defendant was informed in advance of the trial that everyone in the courtroom would be required to wear masks. The Defendant did not object to the masking requirement or

express concern that this would result in a lesser ability to formulate questions based upon the juror's mannerisms. Further, at no point during the trial did he alert the Court that he was unable to see the jury. Had the Defendant objected, adjustments could have been made.

After reviewing the courtroom set-up and the jury members positions, the Court fails to see how the defense was significantly prohibited from viewing the jury, or how masks hindered defense counsel's ability to question jurors during voir dire. Defendant simply makes a general statement that they were restricted from viewing the jury. Without more specificity, it cannot be said that the interest of justice requires a new trial on this basis.

### F.     Allowing multiple government agents to view all of the testimony.

Defendant asserts that the Court improperly allowed multiple government agents to stay in the courtroom and view all of the testimony. The Defendant is correct that two government agents were allowed to be in the courtroom. However, their presence was not improper. One of the agents sat behind the Government's table as their case agent pursuant to Federal Rule of Evidence 715. The other was Special Agent Roedel, who was an expert witness and testified as such.

Regarding Defendant's objection to Special Agent Roedel's presence, this Court ruled that as an expert witness, he was allowed to stay in the courtroom and

observe testimony in order to respond as an expert. *United States v. Seschillie*, 310 F.3d 1208 (9th Cir. 2002) (finding that the judge's decision as to an expert staying in the courtroom is discretionary); *see also Jun Yu v. Idaho State University*, 2019 WL 254240 (D. Idaho 2019). Defendant's expert witness was also allowed to be in the courtroom while the Government's expert was testifying. Prior to trial, this was agreement was acceptable to both parties.

The Defendant fails to elaborate on his statement that the agents were improperly allowed to remain in the courtroom. Therefore, the Court is unsure how allowing these two agents to observe the trial could be construed as improper. Under these circumstances, the interest of justice does not require a new trial.

### G.    Allowing multiple interruptions in Defendant's closing argument.

Defendant asserts that a new trial is warranted because the Court allowed multiple interruptions in his closing argument from the Government that appear to be invalid. The Government acknowledges that they did object but asserts that its objections were in good faith. The Government also points out that the Defendant objected during the Government's closing arguments.

The Government objected a total of five times during Defendant's closing argument. The first two objections pertained to defense impermissibly referencing facts not in evidence. These two objections were sustained. The third objection

pertaining to an improper argument was overruled. The fourth objection related to defense counsel's misstatement of the law. The Court directed counsel to rephrase his statement. Lastly, the Government objected to the line of argument that defense was taking. They pointed out that potential consequences or punishments are not to be considered by the jury. After this objection, the Court instructed the jury that they are not to consider punishment in reaching a verdict.

Both of Defendant's objections during the Government's closing argument were overruled. The first objection was to an improper argument. The second objection was to the use of facts not in evidence. In its ruling, the Court noted that the Government was responding to arguments made in Defendant's closing argument.

As a strategy, counsel may refrain from objecting during closing arguments. *Garcia v. Bunnell*, 33 F.3d 1193, 1200 (9th Cir. 1994). This does not mean that objecting during closing arguments provides grounds for a new trial.

In this case, it does not appear that the Governments objections were in bad faith. Nor is there a basis to conclude that these objections swayed the jury. Defendant asserts that the objections were invalid but does not proffer any further argument or evidence to support this assertion. Without more, it cannot be said that the interest of justice requires a new trial because of the Government's objections

MEMORANDUM DECISION AND ORDER - 17

during Defendant's closing arguments.

### H.   Cumulative effect of sustaining multiple objections for relevancy.

In his final argument, Defendant asserts that the cumulative effect of the Court sustaining multiple relevancy objections swayed the jury and resulted in an unfair trial. This Court will apply the principles of the cumulative effect doctrine to determine whether the overall effect of sustaining the Government's relevancy objections created a trial setting that was fundamentally unfair. For the reasons explained below, it did not.

The Ninth Circuit applies the cumulative effect doctrine to determine whether a trial was unfair. Under this doctrine, the cumulative effect of multiple trial errors can violate due process even when no single error would independently create a trial setting that is fundamentally unfair. *United States v. Preston*, 873 F.3d 829, 835 (9th Cir. 2017). In cases where there are multiple trial errors, an "issue-by-issue harmless error review is far less effective than analyzing the overall effect of all the errors in the context of the evidence introduced at trial." *United States v. Woodford*, 334 F.3d 862, 883 (9th Cir. 2003) (internal citations omitted).

Here, the Government correctly points out that the defense fails to point to any specific objections he believes were incorrectly decided and the Court will not comb through the transcript to review each individual ruling. Since the Defendant

has not pointed to erroneous rulings on objections, the Court cannot find that the cumulative effect of the unchallenged rulings created a fundamentally unfair setting for trial.

It was well within the Government's right to object to the introduction of irrelevant evidence as many times as the Defendant sought to introduce such evidence. Additionally, the Court instructed the jurors at the beginning of the trial and again at the close of evidence that the questions and objections of the attorneys are not evidence and must not be considered as evidence. Therefore, the Court finds that the cumulative effect of the relevancy objections is not grounds for a new trial in this case.

Finally, the Court will find that even taking all of the Defendant's reasons for a new trial together does not cumulatively create a trial setting that was fundamentally unfair. *See Hayes v. Ayers*, 632 F.3d 500, 524 (9th Cir. 2011) (holding that there must be a constitutional violation for the cumulative effect doctrine to apply). Regardless of whether the reasons are taken separately or cumulatively, the Defendant has failed to demonstrate that he received a fundamentally unfair trial.

MEMORANDUM DECISION AND ORDER - 19

## ORDER

**IT IS ORDERED that:**

    **1.  Defendant's Motion for New Trial (Dkt. 133) is DENIED.**

DATED: March 14, 2022

B. Lynn Winmill
U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER - 20**