UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TEL JAMES BOAM,<br><br>Defendant. | Case No. 4:20-cr-00188-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

This matter is before the Court on the Government's request for restitution, pursuant to 18 U.S.C. § 2259, on behalf of T.A. The defendant, Tel James Boam, objects to the amount of restitution requested by the Government. On March 10, 2022, the Court heard oral argument and testimony on restitution and, at Defendant's request, continued the hearing to allow Defendant to identify his own experts to rebut the Government's experts. On May 16, 2022, the Court heard additional oral argument and testimony and took the matter under advisement. For the reasons outlined below, the Court grants restitution in the amount of $2,326,661.

**MEMORANDUM DECISION AND ORDER - 1**

# BACKGROUND

In fall of 2019, Defendant Tel James Boam's wife at the time reported to the Jefferson County Sheriff's Office that she was searching Defendant's phone and found a video of T.A., her daughter and the Defendant's stepdaughter, completely nude in the shower. After receiving the complaint, the Jefferson County Sheriff's Office began investigating Defendants for production of child pornography. This investigation indicated Defendant had produced child pornography of his stepdaughter by placing a hidden digital video camera in the bathroom in her home and surreptitiously recording her while she showered.

During analysis of the online backup for Defendant's phone, Homeland Security Investigations located 37 videos, all of which show T.A. in various stages of undress, including fully nude with her genitals exposed to the camera. The videos were recorded in a bathroom of Defendant and his then-wife's home. The videos show T.A. both in and out of the shower, and the shower curtain in the videos is transparent. Forensic analysis of the online backup data revealed that Defendant's iPhone was associated with the backup files. Further forensic examination of the backup data revealed that the camera used to produce the videos looked like a charger that Defendant's wife has previously found in the bathroom.

In August 2020, Tel James Boam was indicted with sixteen counts of attempted sexual exploitation of a minor child, and one count of possession of child pornography. Dkt. 1. This matter proceeded to trial on September 7, 2021. At the trial, the Government presented evidence that Defendant ordered a hidden camera device. This device is meant to look like a cell phone charger and was ordered on his Amazon account with his credit card. T.A.'s mother testified that she was unaware of the hidden camera and did not order it. The Government also presented evidence of the forensic analysis of the online backup data revealing that Defendant's iPhone was associated with the backup files, as well as forensic evidence of the backup data establishing that the camera used to produce the videos looked like the charger that Defendant had purchased from Amazon and which his wife has previously found in the bathroom. In addition, the Government presented 404(b) evidence involving the two instances that T.A. testified Defendant engaged in genital-to-genital intercourse with her after giving her Ambien.

On September 20, 2021, the jury returned a guilty verdict for all seventeen counts. On December 15, 2021, the Defendant was sentenced. On counts one through sixteen the Defendant was sentenced to thirty (30) years for each count to be served concurrently, and on count seventeen Defendant was sentenced to an

**MEMORANDUM DECISION AND ORDER - 3**

additional fifteen (15) years to be served consecutively to counts one through sixteen for a total term of imprisonment of forty-five (45) years.

On March 10, 2022, the Court held a hearing to consider the amount of restitution to award under 18 U.S.C. § 2259 to T.A. The heard evidence and testimony from two government witnesses at the initial hearing. At Boam's request, the Court held a second hearing on May 16, 2022, to hear testimony from defense witnesses, as well as any rebuttal witnesses by the Government. The Government seeks restitution on behalf of T.A. in the amount of $2,326,661.

In support of the claim of restitution on behalf of T.A., the Government submitted a report from the Smith Economics Group calculating the value of "(1) the loss of wages and employee benefits; (2) the cost of future life care; and (3) the reduction in the value of life ("RVL"), also known as the loss of enjoyment of life." Dkt. 184-3 at 1. In addition, at the initial hearing, and T.A. counselor, Megan McQuary, testified as a witness to further detail the harm T.A. has suffered as a result of Boam's crime, as did Stan V. Smith, Ph.D., who authored the report calculating T.A.'s losses.

## LEGAL STANDARD

The Mandatory Restitution for Sexual Exploitation of Children Act requires a district court to order restitution for the victims of sexually exploitative crimes

committed against children. See 18 U.S.C. § 2259. Section 2259 requires the restitution order to direct the defendant to pay the "full amount of the victim's losses as determined by the court." *Id*. at § 2259(b)(1). Section 2259 defines the word "victim" as "the individual harmed as a result of a commission of a crime under this chapter." 18 U.S.C. § 2259(c). Compensable losses include

- medical services relating to physical, psychiatric, or psychological care;
- physical and occupational therapy or rehabilitation;
- necessary transportation, temporary housing, and child care expenses;
- lost income;
- attorneys' fees, as well as other costs incurred, and;
- any other losses suffered by the victim as a proximate result of the offense.

*See* 18 U.S.C. § 2259(b). The Government bears the burden of proving the propriety and amount of restitution by a preponderance of the evidence. See 18 U.S.C. § 3664(e).  The Ninth Circuit has interpreted this language as allowing restitution only for losses that were "proximately" caused by the defendant's conduct. *See United States v. Laney*, 189 F.3d 954, 965 (9th Cir.1999) (holding, based partly on the "proximate result" language in § 2259(b)(3)(F), that § 2259 "incorporates a requirement of proximate causation").

**MEMORANDUM DECISION AND ORDER - 5**

Accordingly, under the standard set forth by the Ninth Circuit, the Court must make three determinations in order to award restitution under section 2259: "(1) that the individual seeking restitution is a 'victim' of the defendant's offense; (2) that the defendant's offense was a proximate cause of the victim's losses; and (3) that the losses so caused can be calculated with 'some reasonable certainty.'" *Kennedy*, 643 F.3d at 1263 (internal citations omitted). Such an order of restitution shall be issued and enforced in accordance with 18 U.S.C. § 3664. *See* 18 U.S.C. § 2259(b).

## ANALYSIS

Restitution is sought in this case pursuant to 18 U.S.C. § 2259, which makes restitution "mandatory" because Boam was convicted of production and possession of child pornography. See 18 U.S.C. §§ 2259(a) ("[T]he court shall order restitution for any offense under this chapter." (emphasis added)); 2259(b)(4)(A) ("The issuance of a restitution order under this section is *mandatory*.") (emphasis added).

1. Victim

At the outset, the Court finds without question that T.A. is a victim of Boam's crimes of producing and possessing images of T.A. Here, T.A. has provided ample evidence that Boam's surreptitious recording of her while in the

shower caused her emotional and psychic pain, violated her privacy interests, and injured her reputation and wellbeing – all of which establishes she is a "victim" for purposes of § 2259. *Kennedy*, 643 at 1263. Thus, T.A., as the subject of the child pornography that Boam produced and possessed, is a victim of Boam's offenses within the meaning of § 2259. The remaining questions are proximate causation and the appropriate amount of restitution that will compensate T.A. for her harm.

2. **Causation**

Boam argues that any restitution to T.A. is unwarranted under 18 U.S.C. § 2259 because the Government failed to prove, by a preponderance of the evidence, the measure of the losses to T.A. that were proximately caused by Boam's offense. As explained by the Supreme Court, restitution is proper under § 2259 "only to the extent the defendant's offense proximately caused a victim's losses." *Paroline*, 572 U.S. at 448; *see also United States v. Laney*, 189 F.3d 954, 965 (9th Cir.1999) (requiring a "causal connection between the offense of conviction and the victim's harm"). This general proximate-cause limitation "forecloses liability in situations where the causal link between conduct and result is so attenuated that the so-called consequence is more akin to mere fortuity." *Paroline*, 572 U.S. at 445. In cases involving producers of child pornography, parents who permit their children to be used for child pornography production, and individuals who sell children for such

**MEMORANDUM DECISION AND ORDER - 7**

purposes, a showing of but-for causation can be shown with ease, and the general proximate cause limitation is satisfied with "little difficulty." *Id.*

By contrast, "identifying a method for imposing restitution on defendants convicted of possession, receipt, or transportation offenses is not easy." *Kennedy*, 643 F.3d at 1266; *see also Paroline*, 572 U.S. at 450. "The underlying problem is the structure established by § 2259: it is a poor fit for these types of offenses." *Kennedy*, 643 F.3d at 1266. When cases involve these types of offenses, it is more difficult to ascertain the harm the possessor of pornographic images causes to the victim and to apportion that among the thousands of individuals who may have contributed to the victim's injuries by possessing and viewing the pornographic images. *Id.* In such cases, "a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general [aggregate] losses." *Paroline*, 572 U.S. at 458–59.

In either situation, the restitution amount should be "a reasonable and circumscribed award imposed in recognition of the indisputable role of the offender in the causal process underlying the victim's losses and suited to the relative size of that causal role." *Id.* The Government must prove the amount of the victim's losses by a "preponderance of the evidence," and the Court shall resolve

**MEMORANDUM DECISION AND ORDER - 8**

any dispute as to the proper amount of restitution by the same standard. 18 U.S.C. § 3664(e).

In this case, Boam was not convicted solely for possession of child pornography depicting T.A. Rather, in addition to his possession conviction, he was convicted of producing the pornographic images of T.A. by surreptitiously recording her in the shower. Unlike a defendant who possesses but does not produce the child pornography depicting the victim, Boam can point to no other defendant or individual who may have caused T.A.'s harm; he is the sole and direct cause of T.A.'s harm alleged here and thus liable for the full extent of T.A.'s losses. *C.f. United States v. Galan*, 804 F.3d 1287, 1291 (9th Cir. 2015) (holding that, in calculating the amount of restitution to be imposed upon of a defendant convicted of distribution or possession of child pornography, the losses caused by the original abuse should be disaggregated from the losses caused by the ongoing distribution and possession). Therefore, causation may be shown "with ease" in this case. *Paroline*, 572 U.S. at 458–59 ("For example, causation could be shown with ease in many cases involving producers of child pornography.").

This conclusion is supported by the evidence and testimony presented at the restitution hearing. At the restitution hearing, the Government called its expert and T.A.'s counselor, Megan McQuary, LCSW, EMDR-CIT, ACADC, CCTP, to opine

**MEMORANDUM DECISION AND ORDER - 9**

on the trauma experienced by T.A. Ms. McQuary has considerable experience, and the Court credits her expert testimony. She has been a licensed clinical social worker and registered clinical supervisor for over 10 years and is nationally certified trauma professional. She has diagnosed and treated children and adolescents similarly situated to T.A.

Ms. McQuary explained, based on her review of the facts of this case, her interview and evaluation of T.A., and her professional experience, that T.A. suffers from Complex Post-Traumatic Stress Disorder (PTSD) as a direct result of the crimes for which Boam was convicted – specifically producing and possessing images of child pornography. Adolescents who suffer from PTSD not only suffer from psychological effects, but they also experience neurobiological and physiological changes in their brain, making those diagnosed with PTSD more likely to develop somatic and physical health issues later in life. They are four times more likely to develop heart disorders and pulmonary obstructive issues and are four and a half times more likely to develop depression and anxiety; they are also 12 times more likely to commit suicide and 11 times more likely to use drugs and alcohol. They also run a higher overall risk for early mortality.

With respect to T.A., Ms. McQuary noted that T.A. reported suffering from chronic fear and paranoia, panic attacks, social anxiety, trust issues, nightmares,

**MEMORANDUM DECISION AND ORDER - 10**

and insomnia. T.A. reported that she experiences fear being in the bathroom or other rooms alone and feels she has to scan and evaluate all the services and crevices to make sure she is not being watched or filmed. According to Ms. McQuary, these symptoms will continue to have an impact on T.A. throughout her adult life. When T.A. begins a family or settles down with a partner she will likely face potential triggers and challenges related to intimacy and trust. She is also more likely to have a higher rate of absenteeism from work-related activities and to struggle to maintain long-term employment, as well as long-term friendships and intimate relationships.

Because T.A.'s symptomology is consistent with Complex PTSD, which requires digging down through significant layers of the mental health condition, Ms. McQuary testified that T.A. will need counseling at least once per week for the foreseeable future, as well as family counseling at least once per month for the next two years as well, to begin slowly working through the significant trauma associated with her emotional, physical, sexual, and psychological victimization. According to Ms. McQuary, after the initial two-year period, T.A. should receive counseling at least twice per month for approximately another two years. Finally, following the outline of the four years above, T.A. will require counseling once per month for the remainder of her life. Ms. McQuary also recommended, based on

**MEMORANDUM DECISION AND ORDER - 11**

statistics and considerations of Complex PTSD and how it impacts relationships within a marriage and family unit, approximately 12 months of couple/marital counseling with another anticipated 12 sessions of counseling due to ongoing changes, triggers and other trauma responses that may occur.

Ms. McQuary also testified that she anticipates that T.A. will likely be prescribed an anti-anxiety medication as well as potentially something to assist with sleep considering the substantial sleep disturbances she has had since the abuse. In addition, the lingering traumatic symptoms associated with PTSD could impair T.A.'s ability to maintain a job, and attend school in her home and community environments, and to maintain long-term friendships and relationships.

Having considered all of the evidence on the record and the testimony at the restitution hearing, the Court finds Boam proximately caused T.A.'s harm alleged here. In so finding, the Court rejects Boam's argument that he did not cause T.A.'s harm because third parties showed T.A. the videos – not Boam. In *Kennedy*, the Ninth Circuit noted that the victims were harmed by the defendant's conduct of viewing their images even without evidence that the victims knew that the defendant participated in the audience of individuals who viewed the images. *Kennedy*, 643 F.3d at 1263. In other words, as indicated by the Ninth Circuit, it is the defendant's criminal conduct that causes the harm – not the victim's

**MEMORANDUM DECISION AND ORDER - 12**

knowledge of the conduct. Similarly, in this case, it was Boam's criminal conduct in producing pornographic images of T.A. that caused her harm – not the third parties who informed T.A. of Boam's criminal conduct. This conclusion is supported by the testimony of Ms. McQuary, who unequivocally answered "no" when asked whether her opinion in this case would change knowing that government agents, and not Boam, told T.A. about the recordings.

The Court also rejects Boam's argument that Boam's "offense[s] of conviction" of producing and possessing child pornography could not have caused T.A.'s alleged PTSD because such offenses did not entail any form of "sexual violence" at the hands of Boam. Boam introduced this argument through the testimony of his expert witness, Carrie Ann Wright, who testified that only individuals who have experienced one or more actual or threatened injuries – such as actual or threatened serious injury, or actual or threatened sexual violence – can meet the criteria for a PTSD diagnosis. Ms. Wright further testified that T.A. could not meet the criteria for a PTSD diagnosis because T.A. did not experience any form of actual or threatened "sexual violence," which Ms. Wright defined as being inappropriately touched, raped, sexual assaulted, or other "things of that nature."

But Ms. Wright admitted that she never interviewed T.A. to evaluate her and therefore could not accurately diagnose her. Ms. Wright also admitted that not

**MEMORANDUM DECISION AND ORDER - 13**

every clinician agrees with her definition of "sexual violence." Finally, Ms. Wright admitted that, even if T.A. did not suffer from PTSD, she could suffer from other conditions as a result of Boam's offenses of conviction that would require extensive therapy.

By contrast, Ms. McQuary did meet and interview T.A. and implemented and relied on industry-standard screening tools to assess T.A. before diagnosing her with Complex PTSD. Furthermore, Ms. McQuary's rebuttal testimony established that a person could meet the criteria for a PTSD diagnosis without suffering some form of "sexual violence," as defined by Ms. Wright. In Ms. McQuary's opinion, Boam's criminal offenses of producing and possessing child pornography – for which he was convicted – could have and did cause T.A.'s PTSD. Indeed, Ms. McQuary's opinion in this regard is supported by T.A.'s description of the "trauma/loss type that is most bothersome now," in T.A.'s initial PTSD screening form:

> [T.A.] reports that she learned that her step father had been recording her showering and she was unaware. He was convicted and charged but since this time of finding out about recordings she states her and her family's life has been completely shattered. She states feeling anxious, paranoid, unsafe and fearful of being watched. She also feels she cannot trust anyone.

In sum, other than the testimony of Ms. Wright, who never personally met T.A. and by her own admission could not accurately evaluate and diagnose T.A.,

**MEMORANDUM DECISION AND ORDER - 14**

the evidence presented establishes that Boam's offenses proximately caused T.A.'s losses as set forth in Dr. Smith's expert report. The Government therefore has met its burden of proving by a preponderance of the evidence that Boam's "offenses of conviction" proximately caused T.A.'s losses. *See Kennedy*, 643 F.3d at 1263.

### 3. Restitution Amount

For similar reasons, the Court finds that the Government met its burden of proving the amount of T.A.'s losses with reasonable certainty. "Section 2259 is phrased in generous terms, in order to compensate the victims of sexual abuse for the care required to address the long term effects of their abuse." *Laney*, 189 F.3d at 966. "Congress was well aware that children victimized by sexual abuse often do not recover quickly from their injuries," and trial courts therefore have broad discretion in ordering and determining the amount of restitution so long as the court is able "to estimate, based upon facts in the record, the amount of victim's loss with some reasonable certainty." *Id*.

Future counseling expenses, and any "physical, psychiatric, or psychological care," are included in the amount of restitution under Section 2259(c)(2)(A). *Id*. These expenses are included regardless of their "future" nature. *Laney*, 189 F.3d at 966. As noted in *Laney*, ordering restitution based on an estimate of future counseling costs is appropriate when the Government provides a reasonable

**MEMORANDUM DECISION AND ORDER - 15**

estimate of the costs. *Id.* at 967 n.14; *United States v. Osman*, 853 F.3d 1184, 1189 (11th Cir. 2017). "[M]athematical precision is not required in the causal analysis upholding a restitution award" under Section 2259. *United States v. Doe*, 488 F.3d 1154, 1160 (9th Cir. 2007). And the Ninth Circuit has held that a district court may rely upon estimates from mental health professionals of the future counseling needs of a victim. *Id.* at 1161.

Here, it is more than reasonable to conclude that future costs will be necessary for T.A.'s counseling. The Government's expert has recommended as much, and Boam has not refuted this evidence other than to say that T.A. could not have been diagnosed with PTSD, but the Court finds the Government's expert on this issue more credible. In addition, as noted, Boam's expert noted that T.A. could suffer from other conditions that still would require extensive therapy. The counseling estimates the Government has put forth—that account for past and future costs—are reasonably based upon *Boam's conduct* and their expert's opinion on how best to aid T.A. in her recovery.

As outlined in the report of the Government's expert, Stan Smith, the estimated cost of T.A.'s future counseling and medical costs is $320,548. The Government has also submitted evidence – through the Smith report and Dr. Smith's testimony – that the calculation for lost wages and employment benefits,

**MEMORANDUM DECISION AND ORDER - 16**

on the conservative end, is $2,006,113, [1] which Boam has not refuted. In its discretion, the Court therefore awards T.A. $2,326,661 in restitution.

Lastly, under 18 U.S.C. § 3664(f)(3)(A), the Court's restitution order "may direct the defendant to make a single, lump-sum payment [or] partial payments at specified intervals." In this case, the Court will order restitution be paid in one lump sum.

First, it is presumed that any fine or monetary penalty imposed is due immediately unless, in the interest of justice, the Court allows payment on a particular schedule. The Court typically does allow for a payment schedule when the defendant has shown, by affidavit of otherwise, that he or she cannot pay the required sum. Here, Boam will serve 45 years in prison and has substantial assets, such as funds frozen with the escrow company. He also owns farmland and other assets. Absent an affidavit showing that Boam cannot pay the required sum, the Court has no reason to allow payment on an intermittent schedule.

---

[1] The economic report outlines four different scenarios as the basis for T.A.'s lost earnings. The Government is requesting lost earnings based on the most conservative estimate of T.A.'s lost earnings as calculated by Dr. Smith. The expert report also calculates T.A.'s losses stemming from the reduction in value of life, also known as loss of enjoyment of life, but the Government does not seek restitution for those losses.

**MEMORANDUM DECISION AND ORDER - 17**

Requiring a lump-sum payment for a substantial portion of the restitution debt honors the statutory rights of victims to receive full and timely restitution under 18 U.S.C. § 3771(a)(6) and comports with the statutory principle that restitution should be paid as soon as possible, see 18 U.S.C. § 3572(d). Furthermore, pursuant to 18 U.S.C. § 3613(c), "an order of restitution made pursuant to . . . [18 U.S.C. §] 2259 . . . is a lien in favor of the United States on all property and rights to property" of the defendant." 18 U.S.C. § 3613.

## ORDER

1. The Government's request for restitution is GRANTED. T.A. is awarded 2,326,661 in restitution. This amount is due and payable immediately but will be held in escrow while Boam's appeal before the Ninth Circuit is pending.

2. The Government's Motion to Transfer the Funds that Paid the JVTA Assessment to Restitution (Dkt. 186) is GRANTED. As with any other restitution payment, such funds will be held in escrow while Boam's appeal before the Ninth Circuit is pending.

3. The Court will an amended Judgment forthwith.

DATED: August 31, 2022

_____
B. Lynn Winmill
U.S. District Court Judge